UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD DELANCY,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. SEAFOODS, LLC, a Washington and/or a foreign corporation, et al.,<br><br>        Defendants. | CASE NO. C09-1125RSM<br><br>MEMORANDUM AND DECISION |

    Plaintiff Donald Delancy brings this seaman's injury action pursuant to the Jones Act, 46 U.S.C. § 30104, and general maritime law. He seeks to recover damages for a dental injury he sustained while working aboard a fishing vessel, together with maintenance and cure. The parties cross-moved for summary judgment, defendant U.S. Seafoods asking that liability, if any, be limited to a single tooth, and plaintiff asking for summary judgment as to liability under the Jones Act and general maritime law. Dkt. ## 20, 27. The Court granted defendant's motion for summary judgment, limiting liability to damages directly attributable to injury and loss of tooth # 25. Dkt. # 35. The Court found that issues of fact regarding the accident that caused injury to plaintiff's tooth precluded summary on his Jones Act negligence and unseaworthiness claims, and denied plaintiff's motion. *Id*. The matter was then set for trial, and the parties agreed to try the issues to the Court on written submissions rather than live testimony.

    In the trial brief, defendant admitted liability under the Jones Act for the purpose of the trial. Dkt. # 44, p. 2. Thus, the only issue remaining to be determined by the Court is the amount of damages. Plaintiff requests $45,000 in damages; defendant contends that an amount between $1500 and $2500 is appropriate.

MEMORANDUM AND DECISION - 1

Having fully considered the facts found earlier in the Order on summary judgment, the parties' trial briefs, and additional evidence submitted therewith, the Court now enters the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

The facts relevant to damages were determined and set forth in the Order on Summary Judgment, Dkt. # 35. This decision fully incorporates all facts set forth in the prior Order, and they will only be summarized here, supplemented where appropriate with facts found from the parties' trial submissions.

1. Plaintiff Donald Delancy was a crewman on the *F/V Alaska Beauty* on September 18, 2006, the date he was injured. The vessel was moored at the dock in Alaska. Captain George Hutchings directed the crewmen to make repairs to a net reel, which required climbing the gantry. The gantry was reached by a six-foot stepladder. Plaintiff held the ladder steady while Troy Tyehouse ascended to make the repairs with a wrench.

2. Captain Hutchings testified in his deposition that Mr. Tyehouse had completed the task and was descending the stepladder when he slipped and fell backward, landing on the deck. Mr. Tyehouse was not injured, but the wrench he held in his hand struck plaintiff in the mouth.

3. Plaintiff saw dentist James Arneson, D.D.S. in Kodiak that same day. Dr. Arneson noted that tooth # 25 was fractured and teeth ## 24 and 26 were loose. He also noted existing periodontal disease. Dr. Arneson splinted the teeth together with a Kevlar ribbon and advised plaintiff to "take it easy." Plaintiff returned to work on the ship and worked at least until September 29, 2006, when he was diagnosed with bronchopneumonia. Plaintiff advised the doctor he saw that day, John Koller, M.D., that he planned to fly to his home in Sequim, Washington, that same night. Dr. Koller advised plaintiff to stay in town for a day or two, until he felt better able to fly. He also advised plaintiff to follow up with a dentist regarding his tooth and with a doctor regarding his pneumonia upon returning to Sequim. The records available to the Court do not indicate when plaintiff actually returned to Washington State.

4. Plaintiff saw Gary Lange, D.D.S. in Sequim on November 6, 2006. Dr. Lange referred plaintiff to a specialist, Dr. Stig Osterberg, for consideration of an implant to replace tooth # 25. Dr. Osterberg found sufficient bone to support an implant at tooth # 25. He also noted moderate to severe

MEMORANDUM AND DECISION - 2

periodontal disease, and recommended scaling and root planing. Dr. Osterberg's chart notes indicate that at the time of this visit, plaintiff was already missing ten teeth, in addition to the broken tooth # 25. Four of the missing teeth were wisdom teeth which are commonly removed in adults.

5. Defendant paid the bill for the visit to Dr. Lange. Dr. Osterberg's bill was sent to plaintiff, pursuant to office policy to bill patients directly. Plaintiff neither paid the bill nor presented it to defendant for payment. As a result of non-payment, Dr. Osterberg declined to see plaintiff for further treatment.

6. Plaintiff did not seek further dental treatment until October 19, 2009, more than three years after the shipboard injury, and several months after this lawsuit was filed. Dr. Lange extracted seven more teeth and then developed a plan for restoration, including crowns and fillings, for an estimated cost of $8,533. Plaintiff did not proceed with the treatment plan, but later consulted a different dentist, Dr. Douglas Wilkey, D.D.S. Dr. Wilkey originally estimated a cost of $9,154.00 for treatment, but later updated his estimate to place the total cost at $20,073.

7. The Court's earlier Order limited plaintiff's damages to tooth # 25. This was based on the finding that it was plaintiff's own inaction, together with his preexisting periodontal disease, that led to the loss of his teeth beyond tooth # 25. The Court here re-states that finding of fact.

8. Plaintiff testifies in his "Declaration re pain and Suffering" that he suffered extreme pain for a period of approximately one month after the injury. After that, the pain subsided, but he still has pain in his mouth "on a daily basis," rating that pain between "5" and "7" on a scale of "1 to 10." Declaration of Donald Delancy, Dkt. # 45, Exhibit 1. He further states that he has been told he needs dental work to relieve his pain and allow him to eat normally. *Id*.

## CONCLUSIONS OF LAW

Having found these facts from the evidence presented, the Court now makes the following Conclusions of Law:

1. Plaintiff filed this suit pursuant to the Jones Act, 46 U.S.C. § 30104, as amended October 2006, and general maritime law. The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1331. Venue is proper in this district due to defendant's presence here. The vessel *F/V Alaska Beauty* was

MEMORANDUM AND DECISION - 3

owned by defendant, who is a resident of this district.

2. The Jones Act, originally enacted as 46 U.S.C. § 688, provides that "a seaman injured in the course of his employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section." 46 U.S.C.§ 30104(a).

3. Plaintiff was a seaman within the meaning of the Jones Act on September 18, 2006.

4. In order to prevail on his negligence claim under the Jones Act, plaintiff has the burden of proving, by a preponderance of the evidence, that the defendant was negligent, and that such negligence was the cause, however slight, of his injury. *In re Hechinger*, 890 F. 2d 202, 208 (9th Cir. 1989); *cert. denied*, 498 U.S. 848 (1990).

5. In order to prevail on his claim of unseaworthiness under the Jones Act, plaintiff has the burden of proving by a preponderance of the evidence that the *F/V Alaska Beauty* was unseaworthy, and that the unseaworthy condition was a cause of his injury. A vessel is seaworthy if the vessel and its parts and equipment are reasonably fit for their intended purpose, and operated by a crew which is reasonably adequate and competent for the work assigned. Conversely, the vessel is unseaworthy if the vessel or any of its equipment is not reasonably fit for its intended purpose, or if its crew is not reasonably adequate or competent to perform the work assigned. *Ribitzki v. Canmar Reading & Bates, Ltd. Partnership*, 111 F. 3d 658, 664 (9th Cir. 1997).

6. Defendant, for the purpose of trial, has admitted liability "under the Jones Act and for unseaworthiness." Defendant's Trial Brief, Dkt. # 44, pp. 1-2.

7. Plaintiff has the burden of proving his damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate him for the injury caused by the defendant.

8. Pursuant to 46 U.S.C. § 30104, common-law rights or remedies in cases of personal injury to railway employees apply to a seaman injured in the course of employment. Section 53 of the Federal Employers' Liability Act, 45 U.S.C. § 53, which provides for a reduction in the plaintiff's damages as a result of the plaintiff's comparative negligence, is applicable to actions under both the Jones Act and

MEMORANDUM AND DECISION - 4

general maritime law. *See Fuszek v. Royal King Fisheries,* 98 F.3d 514, 516 (9th Cir.1996), *Kopczynski v. The Jacqueline*, 742 F.2d 555, 557–58 (9th Cir.1984), *cert. denied*, 471 U.S. 1136 (1985). "Admiralty has developed and now follows its own fairer and more flexible rule which allows such consideration of contributory negligence in mitigation of damages as justice requires." *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953).

9. The Court has ruled previously that defendant's liability is limited to plaintiff's single tooth, # 25, so only damages related to that tooth may be awarded. Plaintiff's statement that he suffered extreme pain in his mouth after the injury is credible. However, it appears that plaintiff may have delayed as long as five weeks after returning to Sequim before seeing Dr. Lange on November 6, 2006. He offered no testimony or other evidence on this point, and the Court may not speculate as to the reason for the apparent delay. Plaintiff has thus not met his burden of proving, by a preponderance of the evidence, that his pain was extreme for a full month. Nor has he proven that his pain throughout that period was fully attributable to the September 18 injury, where he did not seek treatment that would alleviate the pain until November 6. Further, his statement that he continues to suffer pain at a level of 5 to 7 on a scale of 10, on a daily basis, is not credible in light of his failure to seek dental care for three years after the 2006 visits to Dr. Lange and Dr. Osterberg. Any pain, discomfort, or difficulty in eating after 2006 is attributable solely to plaintiff's inaction, and his damages shall be reduced accordingly.

10. The Court finds that $2500 will reasonably and fairly compensate plaintiff for the pain he experienced in the weeks following the injury to his mouth. Any pain plaintiff experienced after November 6, 2006 was due to his own inaction or failure to mitigate, and is not compensable.

## DECISION OF THE COURT

The Court finds in favor of plaintiff in the amount of $2,500. The Clerk shall enter judgment accordingly.

DATED this 14th day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE